**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**                  **Case No. 2:10-cv-285**
                                       **JUDGE EDMUND A. SARGUS, JR.**
    **v.**                             **Magistrate Judge Kimberly A. Jolson**

**WILLIAM JEFFREY MOORE, *et al.*,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff United States of America's Motion for Summary Judgment. (ECF No. 39.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment.

## BACKGROUND

The Government seeks to enforce Internal Revenue Service (IRS) liens arising from unpaid tax assessments against William Jeffrey Moore for the tax years 1999 to 2006. Mr. Moore disputes the Government's figures, claiming the IRS failed to properly credit him for voluntary and involuntary payments he made to it more than two decades ago.

### A. Procedural History

The Government filed suit against Mr. Moore in this Court in April 2010, demanding judgment for $231,359.68 in unpaid taxes, interest, and penalties (amounts calculated as of May 29, 2009). (Complaint, ECF No. 1, PageID #6.) It also asked the Court to determine that the Government "has a valid and subsisting federal tax lien on all property and rights to property of [Mr. Moore], including his interest" in the property located at 1760 Bedford Road, Columbus,

Ohio, 43212.  (*Id.*)  Further, it requested foreclosure and judicial sale of the Bedford Road property and that the Court determine and allocate net proceeds amongst the other Defendants it named—Chase Manhattan Mortgage Co., Columbus Bonding Center, Inc., 326 South High Street Limited, and the City of Columbus.  (*Id.*, PageID #1, 6.)

Julia Meade Rupp, Mr. Moore's now ex-wife, was also named as a Defendant because she held the Bedford Road property with Mr. Moore as a joint tenant with the right of survivorship. (*Id.* at PageID #6.)  After her divorce from Mr. Moore, she transferred her interest in the property to Mr. Moore by quitclaim deed in September 2014.  (Gov't Mot., ECF No. 39-1, PageID #129; Quitclaim Deed, ECF No. 39-7.)  The parties agree Ms. Rupp no longer has an interest in this case. (Gov't Mot., PageID #129; Moore Settlement Brief, ECF No. 43, PageID #363.)  Defendant Columbus Bonding Center, Inc. answered, disclaiming any interest in the Bedford Road property. (ECF No. 4.)  No other Defendants answered the Complaint.

At a status conference on July 18, 2013, the parties participated in a court-ordered mediation and discussed a settlement.  (ECF No. 32; Moore Settlement Brief at PageID #366; Gov't Settlement Resp., ECF No. 44, at PageID #386–87.)  After a follow-up telephone conference on August 27, 2013, the Court stayed the case, ordering that "[e]ither of the parties may request reactivation if the case is ready for further proceedings."  (Stay Order, ECF No. 36.)  Nearly ten years later, in April 2023, the Government moved to reactivate the case, citing the parties' inability to reach a settlement and the Government's enduring need to enforce its assessments against Mr. Moore.  (Mot. to Reactivate, ECF No. 38.)  The Court granted the motion to reactivate. (ECF No. 40.)

The Government moved for summary judgment.  (Gov't Mot. for Summary Judgment, ECF No. 39.)  At a telephone conference on April 10, 2023, the Court set a briefing schedule on

(1) whether the parties had agreed to a settlement of the case, and (2) the Government's motion for summary judgment (if the issue of settlement was disputed). (ECF No. 42.) Mr. Moore filed a brief arguing the parties had reached a settlement in principle in 2013 (Moore Settlement Brief, ECF No. 43), and the Government responded, arguing that an agreement was never reached and that any prospective settlement was never memorialized in writing. (Gov't Settlement Resp., ECF No. 44.) Mr. Moore responded to the Government's Motion for Summary Judgment (Moore Resp., ECF No. 45), and the Government replied (Gov't Reply, ECF No. 46.)

**B. Factual History**

Mr. Moore is a Columbus-based attorney who was admitted to the Ohio bar in 1982. (Gov't Mot., PageID #129.) He primarily practices criminal defense and related civil causes. (*Id.*) His tax history relevant to this case can be grouped into two timelines: 1994 to 1998, and 1999 to 2006. In the present litigation, the Government does not assert that Mr. Moore has any tax liabilities for the calendar years 1994 to 1998. (*See* Gov't Reply, PageID #441.). Rather, it asserts he owes personal, federal income taxes for tax years 1999 and 2002, and employment and income taxes relating to his sole proprietorship law firm, Moore & Associates, P.C., for tax years 1999 through 2006. (Mot., PageID #128.) In rebuttal, Mr. Moore asserts that the IRS should have applied a 2001 payment to his 1999 to 2006 liabilities, rather than his 1994 to 1998 liabilities. (Moore Resp., PageID #394.) He also disputes several of the IRS's assessments against him. (*Id.*, PageID #399.)

**1. 1994 to 1998 Liabilities and Subsequent Payments**

The Government asserts Mr. Moore had unpaid tax liabilities for tax years 1994 to 1998 that were resolved by two payments. First, according to IRS return transcripts attached to the Government's Motion, Mr. Moore made a voluntary $58,866 payment to the IRS in November 1999. (Gov't Mot., PageID #137.) That payment was credited to outstanding amounts Mr. Moore

owed from tax years 1994 (credited $15,970.33), 1995 (credited $31,102.57), and 1997 (credited $11,793).[1]  (*Id.*)  In his declaration, Mr. Moore states that, pursuant to a 1999 "offer-in-compromise" ("OIC") negotiated by his then-accountant, Jeffrey Durkee, his voluntary November 1999 payment to the IRS "fully satisfied" his "1994–1998 tax liabilities."  (Moore Dec., ECF No. 45-1, PageID #412.)

The Government disputes the existence of an OIC, arguing that no evidence of such an agreement exists in the case record or in the IRS's records.  (Gov't Reply, PageID #442.)  It attached IRS transcripts of Mr. Moore's 1994 to 1998 tax accounts to its Motion, which show no record of an OIC.  (ECF Nos. 39-12 to 39-16.)  In a Declaration attached to his Response, Mr. Moore explains that Mr. Durkee stopped working for him after 1999 and that he has not been able to reach him since then.  (Moore Dec., PageID # 411–12.)  Therefore, he says, he has "not been able to procure any documentation or other evidence" of the OIC.  (*Id.*)

The IRS applied a second payment to those tax years in September 2001.  Pursuant to an IRS levy, Prudential Securities paid the IRS $59,610.40 (the "Prudential payment") out of an account owned by Mr. Moore.  (Gov't Mot., PageID #137–38; Moore Dep., ECF No. 39-2, at PageID #149–50.)  According to return transcripts, the IRS applied the Prudential payment to amounts Mr. Moore owed to it for tax years 1995 (credited $14,528.76), 1996 (credited $31,470.13), 1997 (credited $8,565.95), and 1998 (credited $5,045.56).[2]  (Gov't Mot., PageID # 137.)  Mr. Moore argues the IRS improperly applied the Prudential payment to his accounts for those tax years because his November 1999 voluntary payment was intended to resolve all his tax liabilities for tax years 1994 to 1998.  (Moore Resp., ECF No. 45, at PageID #400–01.)  Thus, he

---

[1] These credited amounts add up to $58,865.90.
[2] These credited amounts add up to $59,610.40.

argues, the Prudential payment should have been applied to later tax years.

### 2. 1999 to 2006 Liabilities and Present Litigation

On March 6, 2006, the IRS initially assessed Mr. Moore with unpaid personal federal income taxes for 1999 and 2002. Attached to its motion for summary judgment, the Government provided the declaration of Joseph Martone, an IRS revenue officer, who reviewed and summarized certified transcripts of the assessments. (Martone Dec., ECF No. 39-5.) According to Mr. Martone, as of the March 2006 assessment, Mr. Moore had not yet filed personal income tax returns for 1999 or 2002. (*Id.* at PageID #294; Transcripts, ECF No. 39-4, PageID #283–91.) For the tax year 1999, the IRS initially assessed $12,465 in unpaid tax, plus $5,488.24 in interest and $5,528.79 in penalties, totaling $23,582.03. (Gov't Mot., PageID #129.) For 2002, the IRS assessed $58,097 in unpaid tax, plus $11,197.50 in interest, and $25,180.21 in penalties, totaling $94,474.71. (*Id.*) With additional interest and penalties accrued on his outstanding personal income tax accounts since 2006, the Government now asserts that, as of January 16, 2023, Mr. Moore owes $44,128.66 total for tax year 1999 and $205,185.66 total for tax year 2002, for a grand total of $249,314.21. (*Id.*, PageID #129–30.)

The IRS also asserts Mr. Moore owes outstanding employment tax liabilities regarding his sole proprietorship law practice, Moore & Associates, P.C. (Gov't Mot., PageID #129–33.) It claims Mr. Moore failed to pay taxes owed arising from the firm's employment of several legal secretaries between 1999 and 2006. From March 31, 1999 to February 28, 2002, the firm employed Kathy Francis as a secretary. (*Id.* at PageID #131–32.) She was replaced by Tricia Day-Barker, who worked at the firm from March 1, 2002 until September 17, 2024. (*Id.*) Following her was Beth Baird, who worked at the firm from January 1, 2005 through at least March 31, 2006. (*Id.*) Mr. Moore answered an interrogatory about his firm's employment of legal secretaries,

establishing that the firm did not employ a secretary between September 2004 and January 2005. (Interrogatory, ECF No. 39-6, at PageID #325–26.)  He also asserted that Ms. Francis "embezzle[d] funds supplied by [Mr. Moore] for payment of some or all of the payroll taxes." (*Id.*)  He does not raise the alleged embezzlement issue in his Response or elsewhere in the case.

The Government claims two types of unpaid employment taxes relating to the firm based on the IRS's March 2006 assessment: (1) Federal Unemployment Tax Act ("FUTA") contributions, which are reported annually on IRS Form 940, and (2) Federal Contributions Act ("FICA") taxes, which are reported quarterly on IRS Form 941.

For the Form 940 FUTA assessments, the IRS assessed unpaid amounts owed for tax years 1999, 2001, 2004, and 2005.  (Gov't Mot., PageID #130–31.)  For the Form 941 FICA assessments, it asserts outstanding account balances for nearly every quarter between the first quarter ("Q1") of 1999 and Q1 2006, excluding Q3 and Q4 of 2002, and Q1 of 2003.  (*Id.*)  Based on Mr. Moore's interrogatory response that he did not employ a legal secretary for the last quarter of 2004, the Government does not seek judgment on FUTA taxes for all of calendar year 2004.  (*Id.*, PageID #132.)  It also does not seek judgment for the Form 941 assessment for Q4 2004.  (*Id.*, PageID #132–33.)  In total, with interest and statutory penalties included, the IRS assessed a total of $127,028.41 of Form 940 and Form 941 taxes as of January 16, 2023.  (*Id.*, PageID #132–33.)

Based on these assessments, the Government asserts it is entitled to the enforcement of liens in favor of the United States that have attached to all of Mr. Moore's property and rights to property.  (*Id.*, PageID #133.)  This includes the real property located at 1760 Bedford Road in Columbus, Ohio.  (*Id.*)  On December 1, 2006, the IRS recorded Notices of Federal Tax Liens ("NFTLs") with Franklin County, Ohio regarding Mr. Moore's unpaid personal federal income tax for 1999 and 2002.  (*Id.*)  It refiled the NFTL in 2016, and the Government contends that Notice

6

remains in effect. (*Id.*)

Mr. Moore argues that the parties reached a settlement agreement in principle at the parties' settlement conference on July 18, 2013. (Moore Resp., PageID #394–95.) Mr. Moore contends that the Government conceded certain reductions in his liabilities for tax years 2002, 2004, and 2005, and that he conceded certain liabilities for tax years 1999 to 2004. (Moore Dec., PageID #413.) Based on those concessions, Mr. Moore asserts his baseline tax liability (not considering interest and penalties) should have been reduced from $114,782.08 to $61,589.79. (*Id.*, PageID #411, 413.) Furthermore, he claims the parties agreed that the Government's counsel would seek evidence of the OIC from the IRS and, if it was unsuccessful, Mr. Moore would again seek out Mr. Durkee and evidence of the OIC. (*Id.*, PageID #413–14.) Mr. Moore claims he never received an update on whether the Government found any record of the OIC following this Court's stay of the case in August 2013. (*Id.*, PageID #415–17.)

Around this time, in July 2013, Mr. Moore submitted an amended Form 1040 for 2002 and a Form 941 for each quarter of 2005 to the Government's lawyer, Ms. Federico. (Moore Dec., PageID #414–15; Moore Letter, ECF No. 45-3.) He then sat for a deposition on August 6, 2013. (Moore Dep., ECF No. 39-2.) Two days later, on August 8, 2013, Ms. Federico emailed Mr. Moore's lawyer, Mr. Koenig, stating that she was working with the IRS on Mr. Moore's new Form 1040 and Form 941 submissions. (Federico Email, ECF No. 43-2, PageID #375.) The Government's new lawyer, Ms. Chernoff, followed up on Dec. 29, 2015, more than two years later, with an email to Mr. Koenig stating that she reviewed the forms and that she needed copies signed by Mr. Moore before she could proceed. (Chernoff Email, ECF No. 43-3, PageID #377.) She also had concerns and questions about Mr. Moore's proposed adjustments to his liabilities for 2004 that Mr. Moore had proposed at the July 2013 conference. (*Id.*) Although Mr. Koenig

responded on January 6, 2016 that he would get answers to Ms. Chernoff's questions, no evidence suggests he did so. (Koenig Email, ECF No. 43-3, PageID #378.) Another new lawyer for the Government, Ms. Hume, followed up on January 6, 2017, asking again for signed copies of the 1040 and 941 forms and for answers to the Government's previous questions. (Hume Email, ECF No. 43-4, PageID #380.)

On January 27, 2017, Mr. Koenig emailed Ms. Hume a letter, dated the same, offering explanations regarding the proposed changes to Mr. Moore's 2004 tax liabilities and promising to submit signed copies of the forms. (Koenig Letter, ECF No. 43-5, PageID #382–85.) Mr. Koenig also explained that "there has been no activity on this case for over a year, and in the interim my computer crashed and I lost most of my e-mail correspondence with your predecessors." (*Id.*, PageID #382.) He claimed that the parties "reached a compromise agreement on most all issues" at the July 2013 conference and listed various allegedly negotiated terms. (Koenig Letter, ECF No. 43-5, PageID #382–83.) Nonetheless, he acknowledged that issues remained for resolution:

> There remained an open issue regarding monies seized from Mr. Moore's Prudential Securities brokerage account, and the IRS' failure to credit those funds toward his account.
>
> . . . .
>
> We disagreed with the government's position [regarding how to credit the Prudential payment], as Mr. Moore had previously sent the IRS a check in the amount of $58,866 on November 8, 1999 to settle all pre-1999 tax liabilities.
>
> I provided Ms. Federico with copies of both the $58,866 and the $59,610.04[3] [sic] checks, and requested a transcript of pre-1999 years showing tax liabilities and applications of these monies so that we could verify whether the IRS' records were correct or not. My recollection is that Ms. Federico indicated that the records I requested were difficult to obtain because of their age, but that it was being worked on. I never received the requested information, and the taxpayer's position remains that all of the $59,610.04 [sic] should be available to apply to tax liabilities for 1999

---

[3] Throughout the briefing, Mr. Moore repeatedly refers to the Prudential payment as $59,610.04, but records show the payment was for $59,610.40. (ECF No. 39-11, at PageID #340.)

and after.

This is essentially where the case stagnated.

(*Id.*, PageID #383.)  The parties provided no evidence of further correspondence prior to the reactivation of the case.

After the Government reactivated the case and filed its Motion for Summary Judgment in April 2023, Mr. Moore searched again and did not locate records of the OIC or the alleged July 2013 settlement agreement.  (*Id.*, PageID #416–17.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact."  *Id.* at 323.  The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means

that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*., 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III. Analysis

Mr. Moore argues that several genuine issues of material fact remain, precluding the Government's Motion for Summary Judgment. First, he insists that, pursuant to an alleged 1999 OIC regarding his 1994 to 1998 tax liabilities, the Government misapplied the 2001 Prudential payment. Second, he claims the parties reached a settlement in principle in July 2013 that reduced his liabilities and caused him to believe he needed to wait for more information from the Government before proceeding with the case. And third, based in part on the alleged 2013 settlement, he contests the calculation of some, but not all, the Government's assessments of his tax liabilities. (Moore Resp., PageID #394.) Mr. Moore also argues that he should not be penalized for the Government's decision to reactivate the case after nearly ten years, but he does not move this Court for a dismissal for failure to prosecute under Fed. R. Civ. P. 41(b) nor for any related relief.

This Court first considers whether a genuine issue of material fact exists regarding the alleged 1999 OIC or the claimed 2013 settlement in principle before addressing the Government's current demands regarding Mr. Moore's tax liabilities.

### A. The Record Does Not Substantiate a 1999 Agreement or a 2013 Settlement.

Mr. Moore argues there remains a genuine issue of fact regarding whether his November 1999 voluntary payment to the IRS entirely resolved his 1994 to 1998 tax liabilities pursuant to

the alleged 1999 OIC.  If so, he claims, the 2001 Prudential payment should have been credited to his 1999 to 2006 liabilities rather than to 1994 to 1998 liabilities that remained after his voluntary payment.

Mr. Moore admits he has been unable to substantiate the existence of such an OIC.  (Moore Dec., PageID # 411–12.)  And the Government convincingly argues that if the IRS had agreed to Mr. Moore's claimed agreement, the arrangement would be reflected on transcripts of Mr. Moore's 1994 to 1998's personal income tax returns.  (Gov't Reply, PageID #442.)  Those transcripts do not account for such an arrangement and do not include any indication of an OIC.  (*See* ECF Nos. 39-12 to 39-16.)  Instead, they show a November 16, 1999 payment that was applied to Mr. Moore's outstanding account balances for those tax years.  (*Id.*)  The transcripts also show future payments from IRS levies, including the 2001 Prudential payment.  (*Id.*)  These "[c]ertificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made."  *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992).  Mr. Moore's unsupported "knowledge and belief" about an OIC, without any other evidence to support it, is insufficient for the summary judgment stage.  *See Ondo v. City of Cleveland*, 795 F.3d 597, 604–05 (6th Cir. 2015) ("An affiant's statement based upon his 'belief' does not demonstrate the personal knowledge required by Rule 56.") (cleaned up) (quoting *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)).

Nonetheless, Mr. Moore argues that, pursuant to a 2013 settlement in principle, it was the Government's responsibility to seek out information regarding the alleged 1999 OIC and that the Government never informed him that it did not locate any such records.  Accordingly, he "had never been informed that the burden to procure evidence of the OIC shifted to him."  (Moore Resp.,

PageID #400.)

To substantiate the alleged settlement in principle, Mr. Moore supplies two types of evidence: his own declaration that the agreement was reached in principle (Moore Dec., ECF No. 45-1), and the Koenig Letter asserting that the parties had "reached a compromise agreement on most all issues." (Koenig Letter, PageID #382.)  But in the Koenig Letter, as quoted and described above, Mr. Koenig acknowledges that substantial issues remained for negotiations, including the existence of the OIC and the effect of the 2001 Prudential payment.  (Koenig Letter, PageID #383.) His characterization of the July 2013 settlement conference strongly suggests that the parties disagreed on the effect of Mr. Moore's November 1999 payment and the Prudential payment following the conference.  And Mr. Moore's declaration does not substantiate a genuine issue of material fact regarding a settlement, especially in light of the evidence to the contrary.  *See Anderson*, 477 U.S. at 251 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

Mr. Moore also argues that Ms. Chernoff and Ms. Hume were misinformed about the nature and terms of the alleged July 18, 2013 settlement in principle because they "had little knowledge of the case, never entered their appearances and did nothing more than seek information Defendant had previously provided to Ms. Federico." (Moore Resp., PageID #402.)  Essentially, he argues, he had a deal with Ms. Federico, not Ms. Chernoff or Ms. Hume.  But his alleged settlement would have been with the Government, not an individual attorney.  And Mr. Moore never provided signed copies of his updated forms, which the Government's attorneys repeatedly said they needed to keep discussions moving.  Mr. Moore could have sought to memorialize the terms of the alleged deal in writing or before this Court, but the record shows he never did.

Even if the Government agreed in July 2013 to search for evidence of the OIC and to update Mr. Moore on its findings, it remained Mr. Moore's responsibility to locate such evidence.

Lacking any reliable evidence that an OIC agreement was reached with the IRS establishing that Mr. Moore's November 1999 payment resolved all his liabilities for tax years 1994 to 1998, a reasonable jury could only conclude that there was no agreement.  Likewise for the 2013 settlement—with no reliable evidence provided to rebut the Government's evidence that no binding settlement was reached, a reasonable jury could only conclude that the parties did not reach an enforceable agreement.

Therefore, no genuine issue of material fact remains regarding the existence of a 1999 OIC, the existence of a July 2013 settlement, the effect of his November 1999 payment, and the effect of the 2001 Prudential payment.  The remainder of this Opinion and Order takes these determinations into account.

### B.  Mr. Moore Does Not Rebut the Validity of the IRS's Tax Assessments.

The Government's demand for judgment against Mr. Moore depends on the validity and accuracy of the IRS's tax assessments.  "An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes.  It is well established in the tax law that an assessment is entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002).  Still, the Government must support the IRS's assessments with "a minimal evidentiary foundation." *United States v. Walton*, 909 F.2d 915, 919 (6th Cir. 1990).  "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." *Gentry*, 962 F.2d at 557.

To rebut the presumption in favor of the assessments, "'the burden on the taxpayer is not merely a burden of producing evidence; it is a burden of persuasion by the preponderance of the evidence that the assessment is not correct.'" *Calderone v. United States*, 799 F.2d 254, 258 (6th

13

Cir. 1986) (quoting *Sinder v. United States*, 655 F.2d 728, 731 (6th Cir. 1981)). "Vague and general denials of the accuracy of the Government's assessment, however, are insufficient" to rebut the presumption. *United States v. Hammon*, 277 Fed.App'x 560, 563 (6th Cir. 2008) (citing *United States v. Walton*, 909 F.2d 915, 922 (6th Cir. 1990)).

### 1. Mr. Moore's Personal Income Tax Liabilities

The Government seeks $249,314.21 total in unpaid tax, interest, and penalties for Mr. Moore's unpaid personal income taxes for the years 1999 and 2002, pursuant to 26 U.S.C. §§ 6601, 6621, and 6622 (each regarding interest on unpaid taxes), and 28 U.S.C. § 1961(c). Its demands are substantiated by transcripts (with Form 4340 certifications) and Mr. Martone's summary indicating that Mr. Moore failed to file 1999 and 2002 federal income tax returns. The record reflects that the IRS thus assessed Mr. Moore's tax liabilities in March 2006, pursuant to 26 U.S.C. § 6020(b).[4] Using IRS databases, Mr. Martone concluded that Mr. Moore's outstanding unpaid tax, interest, and penalties on those years' accounts were $44,128.66 for 1999 and $205,185.66 for 2002.[5] These certified assessments, paired with Mr. Martone's summary analysis, are sufficient to establish a presumption of correctness for the Government's demand for judgment on Mr. Moore's unpaid personal income taxes in the amount of $249,314.21.

Mr. Moore's primary argument against the validity of these assessments rests largely on his factual disputes already discussed above. He claims that the assessments are incorrect because

---

[4] "If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." 26 U.S.C. § 6020(b).

[5] The total of $44,128.66 and $205,185.66 is $249,314.32, which matches the calculation result shown on the "INTST" report from the IRS's Integrated Data Retrieval System ("IDRS"). (ECF No. 39-5, PageID #304; *see* Martone Dec., PageID #294–95.) Mr. Martone's figure (and the Government's demand) is 11 cents less than the IDRS figure. This Court treats this minor discrepancy as a concession from the Government.

the 2001 Prudential payment should have been credited against his tax accounts for the years 1999 to 2006, rather than his tax accounts for years 1994 to 1998.  But Mr. Moore failed to substantiate the existence of the 1999 OIC that he claims resolved his 1994 to 1998 liabilities.  And the Sixth Circuit has indicated that when the IRS obtains an involuntary payment such as a levy, "the IRS makes the allocation" when applying the payments to taxpayer accounts.  *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988).  Thus, the IRS properly exercised its discretion to allocate the Prudential payment first to Mr. Moore's outstanding 1994 to 1998 liabilities.

Second, Mr. Moore argues that the Government's calculation of his 2002 liabilities fail to account for his amended 2002 Form 1040 tax return.  The record indicates that Mr. Moore likely submitted that form to the Government's attorney, Ms. Federico, in July or August 2013 after the parties discussed a settlement.  (*See* Federico Email, ECF No. 43-2, PageID #375.)  The amended return attached to Mr. Moore's response to the Government's Motion calculates that he owed only $13,656 in federal income tax that year, a sharp drop from the $58,097 calculated by the IRS after Mr. Moore failed to initially file for that year.  (Amended 1040, ECF No. 45-4, PageID #422.)  But Mr. Moore provides no evidence that he ever filed this return either before or after the litigation started, and he admits that the amended return was prepared pursuant to settlement discussions in July 2013.  (*See* Moore Dec., PageID #414–15.)  The Government argues that the amended 2002 return is thus inadmissible hearsay evidence.  Accordingly, under Fed. R. Civ. P. 56(c)(2), the Government objects to consideration of that evidence for the purposes of its Motion.

The Government's argument is well-taken.  Courts have repeatedly held inadmissible unfiled and untimely tax filing documents at the summary judgment stage.  *See Buaiz v. United States*, 521 F.Supp.2d 93, 97 (D.D.C. 2007) ("As exhibits, however, the untimely returns are hearsay documents, *see Blodgett v. C.I.R.*, 394 F.3d 1030, 1040 (8th Cir. 2005), which cannot rebut

15

the presumptively correct tax assessments."); *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir.1985) (To rebut the presumption in favor of a tax assessment, the defendant must offer "something other than tax returns, . . . uncorroborated oral testimony, . . . or self-serving statements."); *United States v. Bigalk*, 654 F. Supp. 2d 983, 992 (D. Minn. 2009) ("Those tax returns, offered to prove the amount of tax owed . . . , are inadmissible hearsay that the Responding Defendants cannot use to avoid summary judgment.").  Mr. Moore does not argue for the admissibility of the documents and does not claim that a hearsay exception applies.

The amended 2002 returns are inadmissible hearsay, and such evidence "cannot create the genuine issue of material fact . . . need[ed] to survive summary judgment." *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 Fed. App'x 18, 22 (6th Cir. 2020.)

### 2. Mr. Moore's Employment and Unemployment Tax Liabilities (Form 940 and Form 941)

The Government also seeks judgment for $127,028.41 in unpaid taxes, interest, and penalties relating to employment and unemployment taxes owed by Mr. Moore through his law firm, Moore & Associates, P.C.  (Gov't Mot. for Summary Judgment, at PageID #132–33.)  As with its federal income tax demand, the Government supplied certified transcripts and assessments, in addition to the summary testimony of Mr. Martone, supporting its demand. (Transcripts, ECF No. 39-3; ECF No. 39-5; Martone Dec., PageID #296–27.)

The Government's demand incorporates concessions based on Mr. Moore's response to its interrogatories that his firm did not employ a legal secretary for part of 2004.  (Interrogatories, ECF No. 39-6, PageID #325–26.)  Regarding Mr. Moore's outstanding Form 940 tax balances, it agreed not to demand judgment for the entire tax year 2004.  (Gov't Mot., PageID #132.)  Regarding Mr. Moore's remaining Form 941 tax balances, it agreed not to demand judgment for

Q4 2004. (*Id.*)

Mr. Moore disputes the Government's remaining demands for unpaid assessments of his 1999 to 2006 liabilities relating to his firm.  First, he asserts no Form 941 payroll tax liability for Q3 2004.  But he employed a legal secretary for most of that quarter and filed a Form 941 reporting $1,242.91 in tax liability.  (Transcripts, PageID #245.)  Mr. Moore is responsible for payment of payroll taxes relating to his law firm.  *See Littriello v. United* States, 484 F.3d 372, 279 (6th Cir. 2007).  The Court finds no genuine issue of material fact regarding that quarter.

Next, Mr. Moore disputes his Form 941 tax liabilities for each quarter of 2005.  The Government claims he never filed a Form 941 for any quarter of 2005, and it supports its claim with certified IRS transcripts. (Transcripts, PageID #253–62.)  Accordingly, the IRS independently assessed his liabilities for that year under 26 U.S.C. § 6020(b).  (*See id.*)  To rebut this evidence of his liability amounts, Mr. Moore attached to his Response a Form 941 for each quarter of 2005. (ECF Nos. 45-5 to 45-8.)  But, as with the amended Form 1040 he attached, these documents are inadmissible hearsay because there is no proof they were ever filed.  Thus, Mr. Moore has not presented evidence sufficient to rebut the presumption that the Government's IRS assessments regarding his Form 941 liabilities are valid and accurate.

Accordingly, the Government has met its burden to show that no genuine issue of material fact remains regarding Mr. Moore's Form 940 and Form 941 tax liabilities, and Mr. Moore has not met his burden to show evidence to the contrary.  A reasonable jury could only conclude that Mr. Moore owes outstanding Form 940 and Form 941 tax liabilities.

### 3.  Equitable Considerations

Mr. Moore's Response to the Government's Motion focuses largely on blaming the Government for its inaction regarding the terms Mr. Moore asserts the parties agreed to at the July

18, 2013 settlement conference.[6]

Mr. Moore asserts that he should not be punished for the Government's dilatory communications regarding his proposed amended returns between the August 2013 stay and the reactivation of the case in April 2023. But he provides no evidence that he sought updates or a speedier resolution to this matter during the same time frame. In fact, he took over one year to respond to Ms. Chernoff's 2015 request for signed copies of his amended tax forms, blaming the delay on a crashed computer. And he provides no evidence that signed returns were ever submitted, as the Government repeatedly requested.

Meanwhile, Mr. Moore was aware, or should have been aware, that interest and penalties continued to accrue on his outstanding balances. In addition to the present litigation, which began in 2010, Mr. Moore received notice of the Prudential payment in the early 2000s and received visits from IRS agents around that time. (Moore Dep., PageID #149–50.) The IRS also sent him a notice on September 6, 2005 that he had nearly $60,000 in unpaid taxes. (Transcripts, ECF No. 39-4, PageID #284.) Yet, after this litigation was stayed in August 2013, he never moved this Court for any action in the case, and he lagged in communicating with the Government.

Nonetheless, the Government also bears some blame for the accrual of Mr. Moore's additional interest and penalties. After the parties' July 18, 2013 settlement conference, the Government's attorney, Ms. Federico, emailed Mr. Moore's attorney, Mr. Koenig, on August 8, 2013, explaining that she was working with the IRS on Mr. Moore's updated 2002 Form 1040 and 2005 Form 941s. (Federico Email, ECF No. 43-2.) The next communication between the parties

---

[6] Although he raises equitable arguments and cites to Fed. R. Civ. P. 41(b) (involuntary dismissal for failure to prosecute) and Fed. R. Civ. P. 56(d) (additional time for obtaining facts at summary judgment), he explicitly declines to move this Court under those rules. (Moore Resp., PageID #407.) Therefore, this Court only generally considers his equitable arguments and assesses them only in context of the Government's Motion.

in the record is Ms. Chernoff's email to Mr. Koenig on December 29, 2015, more than two years and four months later, in which she raises several concerns and asks for signed copies of the forms. (Chernoff Email, ECF No. 43-3.)  The parties have shown no further communication after Mr. Moore's attorney sent a detailed letter to the Government in January 2017.  (*See* Koenig Letter.) The next activity between the parties in the record was over six years later, when the Government reopened this case and filed its Motion for Summary Judgment in April 2023.  Its Motion came nearly ten years after this Court granted a stay of all proceedings on August 27, 2013.  Meanwhile, Mr. Moore accrued more interest and possibly more penalties.

Although Mr. Moore has not shown that he followed up with the information the Government requested, the Government's delay in moving this case forward burdened Mr. Moore with additional tax liabilities.  After this Court granted the parties' joint request for a stay so that they could continue settlement discussions, the Government disrupted the progress of the case by delaying further discussions and declining to take further action in this case.

Even so, this Court has limited capabilities to address the Government's role in the additional interest and possible penalties accrued to Mr. Moore's tax accounts since the stay. Under 26 U.S.C. § 6406(e), the Secretary of the Treasury is empowered to abate the assessment of interest for any period when the taxpayer's deficiency is attributable to certain conduct by an officer or employee of the IRS.  But the taxpayer must first raise such a request to the IRS, and the IRS's refusal to abate a taxpayer's interest under that statute is reviewable exclusively by the U.S. Tax Court.  *See* 26 U.S.C. § 6406(e) and (h); *Hinck v. United States*, 550 U.S. 501, 506 (2007) (holding that under 26 U.S.C. § 6406(h), the U.S. Tax Court has exclusive jurisdiction to review the IRS's decision not to grant a tax interest abatement under § 6406(e)).

Penalties are a different story.  When a taxpayer fails to pay the amount of taxes he owes

as shown by his tax returns, penalties are imposed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2). Given the ambiguity around the status of settlement talks at the time of this Court's stay in August 2013 and the delays caused by the Government after the stay, this Court concludes that Mr. Moore's failure to pay his tax liabilities after the stay was due to reasonable cause and not willful neglect. Therefore, Mr. Moore is not liable for any penalties that relate to his 1999 to 2006 tax year liabilities assessed by the IRS after August 27, 2013, if any such penalties were assessed.

Otherwise, the Government has met its burden to show that no genuine issue of material fact exists for trial. In turn, Mr. Moore has not met his burden to produce evidence to the contrary. Accordingly, the Government is entitled to summary judgment on its demands other than the penalties accrued on Mr. Moore's 1999 to 2006 tax accounts after August 27, 2013, if any. Because the existence of penalties assessed after that date is not immediately clear from the record, this Court **ORDERS** the Government to file with this Court an updated demand amount that accounts for this Court's decision reversing the assessment of those penalties or otherwise to file notice with this Court that there were no such penalties assessed.

### 4. The Government Is Entitled to Enforce Its Liens

In light of the taxes owed by Mr. Moore, the Government demands to enforce its liens on Mr. Moore's property and right to property. Specifically, it seeks to enforce federal tax liens that have attached to Mr. Moore's property located at 1760 Bedford Road, Columbus, Ohio. According to 26 U.S.C. § 6321,

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real

or personal, belonging to such person.

Under 26 U.S.C. § 7403, the Government may enforce its liens by filing a civil action in a district court.  The court shall then:

> adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

Government liens on Mr. Moore's property arose when it assessed Mr. Moore's unpaid taxes, interest, and penalties in March 2006, and those liens continue to this day.  *See* 26 U.S.C. § 6321.  Given that the Government has shown it is entitled to recover Mr. Moore's unpaid taxes, interest, and penalties (except those penalties assessed after August 27, 2013, if any), it is entitled to enforce those liens pursuant to 26 U.S.C. § 7403.  It also joined parties potentially having an interest in the property, as required by 26 U.S.C. § 7403(b).  And this Court is satisfied from the record that all interested parties have been notified.  Apart from disputing the underlying tax obligations, Mr. Moore does not contest the Government's liens or its ability to enforce them. (*See* Moore Resp., ECF No. 45.)

Accordingly, the Government may seize and sell the property located at 1760 Bedford Road.  *See United States v. Big Value Supermarkets, Inc.*, 898 F.2d 493, 496 (6th Cir. 1990) ("It is settled federal law that the United States may seize and sell both real and personal property of the taxpayer, both tangible and intangible, to satisfy its liens.") (citing *G.M. Leasing Corp. v. United States*, 429 U.S 338, 349–50 & 349 n. 15 (1977)); *see* 26 U.S.C. § 6331.

Because every Defendant other than Mr. Moore has either disclaimed or failed to answer, the Government's interest in the Bedford Road property takes first priority by default.  *See Patch*

21

*of Land Lending, LLC v. Mayfair Real Estate, LLC*, No. 2:17-cv-483, 2018 WL 3148363 (S.D. Ohio June 27, 2018).

### IV.  Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment.  (ECF No. 39.)  The Court concludes that the Government is entitled to recover from Mr. Moore its demand for unpaid taxes, interest, and penalties, except as it pertains to penalties assessed after August 27, 2013, if any.  The Court **ORDERS** the Government to file in this Court an updated accounting of Mr. Moore's tax liabilities, including the amount of penalties assessed after August 27, 2013, if any, on or before **November 25, 2024**.  After receiving the updated accounting, this Court will enter judgment accordingly.

This Court further **ORDERS** the Government to file notice regarding the status of Defendant City of Columbus, including whether it intends to voluntarily dismiss the City from the case, on or before **November 25, 2024**.  Finally, this Court **ORDERS** the Government to file a proposed judgment entry and decree of mortgage foreclosure and sale on or before **December 2, 2024**.  This case remains open.

**IT IS SO ORDERED.**

**11/6/2024**                                              **s/Edmund A. Sargus, Jr.**
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**